**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ELI LILLY AND COMPANY, IMCLONE SYSTEMS LLC,**<br><br>            **Plaintiffs,**<br><br>       v.<br><br>**GENENTECH, INC., CITY OF HOPE,**<br><br>            **Defendants.** | **Case No.: 13-CV-0919 YGR**<br><br>**ORDER GRANTING MOTION TO TRANSFER AND DENYING WITHOUT PREJUDICE MOTIONS TO DISMISS AND TO SEAL** |

Plaintiffs Eli Lilly and Company ("Lilly") and ImClone Systems LLC ("ImClone") bring this patent action against Defendants Genentech, Inc. ("Genentech") and City of Hope. Plaintiffs make an anti-cancer drug sold under the brand name Erbitux. Plaintiffs have a licensing agreement with Genentech, under which Plaintiffs may practice two patents held by Defendants:

1. U.S. Patent No. 6,331,415, titled "Methods of Producing Immunoglobulins, Vectors and Transformed Host Cells for Use Therein" ("Cabilly II"); and

2. U.S. Patent No. 7,923,221, titled "Methods of Making Antibody Heavy and Light Chains Having Specificity for a Desired Antigen" ("Cabilly III").

Plaintiffs' Complaint sets forth seven causes of action:

1. Cabilly II patent invalidity;
2. Cabilly III patent invalidity;
3. Cabilly II patent non-infringement;
4. Cabilly III patent non-infringement;

5. Unenforceability of Cabilly II and III under 35 U.S.C. § 135(c);[1]

6. Unenforceability of Cabilly II and III due to inequitable conduct; and

7. Declaratory relief in the form of a declaration that Lilly owes Defendants no royalties.

Three motions are now before this Court. First, Defendants move pursuant to 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the Central District of California, where Senior District Judge Mariana Pfaelzer has presided over substantial previous litigation of the Cabilly patents. Dkt. No. 20. Second, Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' fifth and sixth claims. Dkt. No. 24. Third, Plaintiffs move to seal a document filed in connection with their opposition to the Rule 12(b)(6) motion. Dkt. No. 38.

Having carefully considered the papers submitted and having had the benefit of oral argument, for the reasons set forth below the Court hereby **GRANTS** Defendants' motion to transfer this action to the Central District of California. Defendants' Motion to Dismiss is **DENIED WITHOUT PREJUDICE** to later refiling in the Central District. Because the Court does not reach the motion to dismiss, Plaintiffs' motion to seal is **DENIED AS MOOT**. Plaintiffs are excused from filing the document they provisionally submitted under seal.

## I. RELEVANT BACKGROUND

### A. PARTIES AND POTENTIAL WITNESSES

Plaintiff Lilly is an Indiana corporation with its principal place of business in Indianapolis. Plaintiff ImClone is a Delaware limited liability company with its principal place of business in

---

[1] Effective June 3, 2013, 35 U.S.C. § 135(c) was amended by Public Law 113-13. It now addresses a different subject matter than it did when Plaintiffs filed their Complaint on February 28, 2013. At that time, § 135(c) required parties to an "interference"—that is, a Patent and Trademark Office ("PTO") proceeding to determine the time-wise priority of invention between rival claimants—to file with the PTO a copy of any agreement "made in connection with or in contemplation of the termination of the interference." 35 U.S.C.A. § 135 (West 2012). Failure to do so rendered both the underlying agreement and the patent or patents involved in the interference "permanently unenforceable." *Id.* In this case, Plaintiffs allege that Defendants executed an agreement with third party Celltech Ltd. that terminated an interference involving Cabilly II, but that Defendants did not comply with § 135(c). *See* Compl. ¶¶ 60-73.

1 New Jersey.  Defendant Genentech is a Delaware corporation with its principal place of business in
2 South San Francisco, California.  Defendant City of Hope is a California not-for-profit organization
3 with its principal place of business in Duarte, California, a city in the greater Los Angeles area.
4 City of Hope also has a place of business in San Francisco.  Genentech and City of Hope are co-
5 assignees of the Cabilly II and III patents.

6       The Cabilly patents list five inventors: Shmuel Cabilly, Herbert Heyneker, William Holmes,
7 Arthur Riggs, and Ronald Wetzel.  Only Dr. Riggs still works for one of the parties; he works for
8 City of Hope and resides within the Central District of California.  The remaining four inventors are
9 non-parties to this action.  Of those four, only Dr. Heyneker lives within the Northern District of
10 California.  Dr. Cabilly lives in Israel, Dr. Holmes in Oregon, and Dr. Wetzel in Pennsylvania.

**B.     PAST PROSECUTION AND LITIGATION OF CABILLY II AND III**

12       The Cabilly II patent application was first filed in 1988 as a continuation to a predecessor
13 patent denominated "Cabilly I."  A seven-year interference proceeding followed, as well as federal
14 litigation over the results of that interference proceeding, and then several additional years of
15 substantive examination by the PTO.  Cabilly II first issued in 2001.  The Cabilly III patent first
16 issued in 2011, as a result of an application filed by Genentech and City of Hope in 1995.

17       Since 2003, Judge Pfaelzer has presided over four cases against Genentech and City of
18 Hope involving the Cabilly I and II patents:

19     1.  *MedImmune, Inc. v. Genentech, Inc.*, No. 2:03-cv-02567-MRP (filed Apr. 11, 2003)
20         ("*MedImmune*");

21     2.  *Centocor, Inc. v. Genentech, Inc.*, No. 2:08-cv-03573-MRP (filed May 30, 2008)
22         ("*Centocor*");

23     3.  *Glaxo Group Ltd. v. Genentech, Inc.*, No. 2:10-cv-02764-MRP-FMO (filed Feb. 17,
24         2010) ("*Glaxo Group*"); and

25     4.  *Human Genome Sciences, Inc. v. Genentech, Inc.*, No. 2:11-cv-06519-MRP-JEM
26         (filed Jan. 25, 2011) ("*HGS*").

Defendants' Request for Judicial Notice ISO Motions to Transfer and Dismiss (Dkt. No. 21 ["RJN"]), Exs. C ("*MedImmune* Docket"), D ("*Centocor* Docket"), E ("*Glaxo Group* Docket"), F ("*HGS* Docket").[2]

The first case, *MedImmune*, was initially assigned to Judge Pfaelzer. *See MedImmune* Docket No. 1. *Centocor* was initially filed in the Central District and promptly transferred to Judge Pfaelzer as being related to *MedImmune*. *See Centocor* Docket No. 8. *Glaxo Group* was initially filed in the Southern District of Florida, but voluntarily dismissed and then refiled in this District. *Glaxo Grp. Ltd. v. Genentech, Inc.*, C 10-00675 JSW, 2010 WL 1445666, at *1 (N.D. Cal. Apr. 12, 2010). Genentech and City of Hope successfully moved this Court for transfer to the Central District. *Id.* at *6. Genentech and City of Hope filed a Notice of Related Case on April 23, 2010, and the Central District transferred the case to Judge Pfaelzer the same day. *Glaxo Group* Docket Nos. 28-29. Finally, *HGS* was initially filed in the District of Delaware as three distinct cases, all of which came before District Judge Stark. *See Human Genome Sciences, Inc. v. Genentech, Inc.*, CA 11-082-LPS, 2011 WL 2911797, at *1 (D. Del. July 18, 2011). Genentech and City of Hope successfully moved to have all three cases transferred to the Central District of California. *Id.* at *11. In granting the motion to transfer, Judge Stark gave "decisive" weight to Judge Pfaelzer's "experience with the Cabilly II patent and willingness to preside over these litigations." *Id.* Upon transfer, the Central District assigned the case directly to Judge Pfaelzer. *See HGS* Docket No. 51.

Judge Pfaelzer presided over substantial proceedings in all four of the Cabilly cases. In *MedImmune*, Judge Pfaelzer oversaw discovery, issued a claim construction order, ruled on a motion for summary judgment, and presided over a remand from the United States Supreme Court before the case ultimately settled in June 2008. Declaration of Daralyn J. Durie ISO Transfer Motion (Dkt. No. 22 ["Durie Decl."]) ¶¶ 2-4; *MedImmune* Docket Nos. 243, 353, 373. In *Centocor*, Judge Pfaelzer presided over discovery, issued a claim construction order, and heard argument on summary judgment motions, which were under submission when the case settled in September 2010. Durie Decl. ¶¶ 5-6; *Centocor* Docket Nos. 93, 244-49, 346. In *Glaxo Group*,

---

[2] Defendants' RJN is unopposed and the Court takes judicial notice of the court documents therein. Fed. R. Evid. 201; *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

Judge Pfaelzer again presided over discovery and claim construction. Durie Decl. ¶ 10; *Glaxo Group* Docket Nos. 63, 96. Motions for summary judgment had been filed, but not argued or decided, when the case settled in April 2012. *Glaxo Group* Docket Nos. 161-65, 225. Finally, in *HGS*, Judge Pfaelzer had ruled on a motion to dismiss when the case settled in December 2012. Durie Decl. ¶ 11; *HGS* Docket Nos. 104, 142.

### C. THE INSTANT LITIGATION

In 2005, Genentech and ImClone entered into the "Non-Exclusive Cabilly Patent License Agreement" (the "license agreement"). The license agreement gave ImClone a license to practice the Cabilly II patent, as well as the Cabilly III patent when it later issued. The license agreement contains a forum selection clause which provides, in pertinent part: "[A]ny disputes arising out of or related to this Agreement must be brought in either the California Superior Court for the County of San Mateo or the U.S. District Court for the Northern District of California[.]" Durie Decl. ¶ 14, Ex. 2 (Dkt. No. 36), § 8.09. In 2008, Lilly acquired ImClone and thus became the licensee under the license agreement. City of Hope is not a party to the license agreement.

On February 28, 2013, Plaintiffs filed the instant lawsuit in this District. On April 22, 2013, Defendants moved for transfer to the Central District. Plaintiffs oppose transfer, primarily relying on the forum-selection clause in the license agreement and the deference due to their choice of forum. Defendants primarily argue that Judge Pfaelzer's previous experience with the Cabilly line of patents will result in significant judicial efficiencies if this litigation is transferred to the Central District, where they assume it will ultimately be heard by Judge Pfaelzer.

The Central District's local rules provide, in pertinent part:

> At the time a civil action . . . is filed, or as soon as known thereafter, the attorney shall file and serve on all parties who have appeared a Notice of Related Case(s), stating whether any action *previously filed* or currently pending in the Central District and the action being filed appear:
>
> (a) To arise from the same or a closely related transaction, happening or event; or
> (b) To call for determination of the same or substantially related or similar questions of law and fact; or
> (c) For other reasons would entail substantial duplication of labor if heard by different judges; or

5

        (d)     To involve the same *patent* . . . and one of the factors identified above in a, b or c is present.

C.D. Cal. L.R. 83-1.3 (emphasis added). Defendants appeal to subsections (b) and (d), as well as the provision that an action may be related to one "previously filed."

On May 23, 2013, Defendants moved to relate *Bristol-Myers Squibb Co. v. Genentech, Inc., et al.*, No. 3:13-cv-02045-SI, to this case. Dkt. No. 55. On June 26, 2013, the undersigned denied that motion. Dkt. No. 67. On July 23, 2013, the presiding judge in *Bristol-Myers Squibb*, Judge Illston, transferred the case to the Central District of California to "allow Judge Pfaelzer to apply the expertise she has gained through presiding over numerous lawsuits involving the Cabilly patents, including issuing multiple claim constructions and hearing substantive arguments about invalidity." *Bristol-Myers Squibb Co. v. Genentech*, C 13-2045 SI, 2013 WL 3829599, at *4 (N.D. Cal. July 23, 2013).

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of section 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation omitted).

In patent cases, the law of the regional circuit applies when considering a § 1404 motion. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). In the Ninth Circuit, a motion for transfer lies within the broad discretion of the district court, and must be decided on the basis of an "individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (internal quotation marks omitted). The moving party bears the burden to show that: (1) venue is proper in the transferor district; (2) the transferee district is one where the action might have been brought; and (3) the transfer will serve the convenience of the parties and witnesses, and will promote the interests of justice. *See Hoffman v Blaski*, 363 U.S. 335, 343-44 (1960); *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992).

Where venue is determined to be proper in both districts, a district court has broad discretion to determine whether to transfer considering, on a case-by-case basis, factors of convenience and fairness. *See Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 639 (9th Cir.1988); *Roberts v. C.R. England, Inc.*, 827 F. Supp. 2d 1078, 1086 (N.D. Cal. 2011). Among the factors the court may consider are: "(1) the location where [any] relevant agreements were negotiated and executed, (2) the [forum] that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones*, 211 F.3d at 498-99. The presence of a forum-selection clause is a "significant" but not a "dispositive" factor. *Id.* at 499, 499 n.20. Another appropriate factor for consideration is the average time to trial in the transferor and transferee courts. *See Carolina Cas. Co. v. Data Broad. Corp.*, 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *see also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984). Though the district court's discretion is broad and its inquiry case-specific, certain factors are not appropriate to consider. *See*, *e.g.*, CAL. PRAC. GUIDE FED. CIV. PRO. BEFORE TRIAL Ch. 4-K §§ 4:750-753 (listing factors courts generally will not consider, including the convenience of counsel, claims of local prejudice, or, in federal question cases, claims of greater familiarity with federal law, as opposed to state law in diversity cases or factual matters generally).

### III. ANALYSIS

As a preliminary matter, the parties concede, and the Court holds, that venue for this action is proper in the Northern District and that it "might have been brought" in the Central District within the meaning of § 1404(a), notwithstanding the license agreement's forum selection clause. *See* 28 U.S.C. § 1391(b), (d); *see also BioGenex Laboratories v. Sentara Healthcare*, C 09-04210 MHP, 2010 WL 889282, *8 (N.D. Cal. Mar. 11, 2010) (rejecting argument that case could not have been brought in proposed transferee district because forum selection clause specified venue in

7

transferor district). The Court therefore proceeds to considering the relevant convenience factors and the interests of justice.

The parties focus primarily on, on the one hand, the forum selection clause identifying the Northern District as the situs for litigation arising from the licensing agreement and, on the other, the efficiencies stemming from Judge Pfaelzer's previous experience with the Cabilly line of patents. They also analyze the following factors: (1) Plaintiffs' choice of forum; (2) the location of negotiations and execution of the license agreement; (3) the parties' contacts with the respective fora, including those relating to Plaintiffs' cause of action; (4) ease and access to sources of proof; (5) relative court congestion; (6) familiarity with governing law; and (7) the availability of compulsory process. Defendants take the position that these latter seven factors are, on balance, neutral, while Plaintiffs argue that most of the factors weigh against transfer while the rest are in equipoise. The Court concludes that, whether these seven factors lean toward transfer or are in equipoise is immaterial because, under the individualized circumstances of this case, *see Jones*, 211 F.3d at 498, they are due very little weight.[3] The factors central to the motion at bar are the forum

---

[3] To the extent these factors do weigh anything, all are neutral but for two that slightly favor transfer. Reviewing them in order: (1) Plaintiffs' choice of forum leans here, as always, against transfer, but the Court assigns this factor minimal weight because (a) the forum selection clause means that Plaintiffs lacked a meaningful choice of forum and (b) the forum selection clause was obviously designed to benefit Genentech, who is based within the Northern District, rather than Plaintiffs, who are based in Indiana and New Jersey. (2) The location of the negotiation and execution of the license agreement is due minimal weight: though Plaintiffs present evidence that the license agreement was at least partly negotiated and executed in this District, the Court disagrees with Plaintiffs' assertion that the license agreement is "the origin of this lawsuit." The core of the Complaint is Plaintiffs' attack on the Genentech-Celltech settlement. Plaintiffs analyze that settlement under the rubric of (3) the contacts relating to Plaintiffs' cause of action, and the Court finds that that factor slightly favors transfer. (4) The factor of ease and access to sources of proof is neutral: key witnesses are scattered and thus will have to travel to either forum, and documents are physically present in both. Moreover, the physical location of documents is, in this case, due minimal weight because those documents will be produced electronically. *See Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1362 (N.D. Cal. 2007). (5) Relative court congestion is a neutral factor: Defendants provide the average times to trial for both Districts, and Plaintiffs provide the average times to disposition (which includes settled cases), but (a) the trial figures favor transfer while the disposition figures disfavor it, and (b) the Court is unable to determine at this time which statistic is more relevant. *See Young v. Wells Fargo & Co.*, C 08-3735 SI, 2008 WL 5245894 (N.D. Cal. Dec. 17, 2008). (6) Familiarity with the governing law is a non-factor in federal question cases where both fora are federal courts. *E.g.*, CAL. PRAC. GUIDE FED. CIV. PRO.

8

selection clause and judicial economy. The Court concludes that the likely gains to judicial economy outweigh the presence of the license agreement's forum selection clause.

The forum selection clause would carry more weight if it benefitted the party seeking to enforce it. Here, however, the forum selection clause favors Genentech, which seeks transfer. This lessens the weight due the forum selection clause. *Cf. Glaxo Grp. Ltd*, 2010 WL 1445666, at *3 ("The Court affords little weight to [non-movant's] argument that it is more convenient for Defendants to litigate in this District when Defendants have requested to transfer this case."); *Bristol-Myers Squibb*, 2013 WL 3829599, at *5 (rejecting argument that Northern District is more convenient forum for "Genentech and its witnesses" where Genentech sought transfer). Plaintiffs, who are based out of state, have no especial connection with either District except for the forum selection clause. Plaintiffs argue that the forum selection clause was drafted to provide both parties to the license agreement "with the predictability of having any dispute arising out of the agreement heard in a forum familiar with patent cases, by patent savvy judges and under a set of prescribed patent rules." Opp'n (Dkt. No. 39) at 13. That may be so, but the description fits the Central District as well. At oral argument, Plaintiffs challenged the premise that the forum selection clause benefits Genentech, emphasizing language in the clause that purports to require the Court to construe the clause as if it had been "drafted equally" by both sides. That language does not help Plaintiffs, however, since equal drafting does not necessarily mean equal benefit. There is nothing unusual about an equally drafted contract provision that benefits one side to the detriment of the other; indeed, that is the essence of consideration. Plaintiffs offer no compelling reason to give the forum selection clause dispositive weight.

The factor of judicial efficiency, however, does have such weight. "[C]ourts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010).

---

BEFORE TRIAL Ch. 4-K, § 4:753. Lastly, (7) the availability of compulsory process factor is neutral because both the Central and Northern District of California may compel process within (and only within) the entire state of California. *See Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 821 (N.D. Cal. 2008) (citing Fed. R. Civ. P. 45(b)(2)(C) (authorizing subpoena of witnesses anywhere within state if state statute so provides), Cal. Code Civ. Proc. § 1989 (so providing)).

"Consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997). And in highly technical cases such as this one, judicial economy favors transfer to a court that has a working familiarity with the background technology or science. *See id.*

Judge Pfaelzer has significant experience and familiarity with the Cabilly line of patents. The Court need not recite it at length, as the parties are familiar with it and three other district judges have already described it. *Human Genome Sciences*, 2011 WL 2911797, at *10; *Glaxo Grp.*, 2010 WL 1445666, at *3; *Bristol-Myers Squibb*, 2013 WL 3829599, at *1-3. In this case, where the convenience factors are due little weight, judicial economy is the decisive factor, and it favors transfer.

The Court finds Plaintiffs' arguments to the contrary unpersuasive. Plaintiffs argue that Judge Pfaelzer's experience with the Cabilly patents is "overstated." First, the Court disagrees. Judge Pfaelzer has presided over Cabilly-related litigation for ten years, issued dozens of substantive orders, and become, in her own words, a "student" of at least Cabilly II. *See* RJN Ex. A at 4:3-5. Second, if the Court were to assume for the sake of argument that Judge Pfaelzer's experience had been overstated, it would not follow that the experience she does have would fail to yield significant judicial efficiencies.

Plaintiff also contends that Erbitux, which treats cancer, and the products at issue in Judge Pfaelzer's earlier Cabilly suits, which treat other illnesses like rheumatoid arthritis, are sufficiently different that any potential gains to judicial efficiency are "illusory at best." Opp'n at 16-18. Not so. The docket sheets from the earlier litigation show that Judge Pfaelzer has considered many different products. These earlier experiences provide a bank of experience on which Judge Pfaelzer may draw if she presides over the instant litigation. Judge Pfaelzer's experience with multiple products and multiple Cabilly patents makes her more, not less, prepared to oversee the instant litigation. The fact that Erbitux is different from the earlier products does not wipe away Judge Pfaelzer's familiarity with the background science required to understand the Cabilly patents

10

themselves. *Cf. Bristol-Myers Squibb*, 2013 WL 3829599, at *4 (in transferring Cabilly case, noting similarity between accused products and those previously considered by Judge Pfaelzer).

At oral argument, Plaintiffs suggested that Judge Pfaelzer's experience with the Cabilly patents is not recent enough to result in efficiency gains. They cite for support *In re Verizon Business Network Services Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011), where the Federal Circuit determined that a district court had erred in denying a transfer primarily because it had presided over claim construction of the same patent in a case that had settled "more than five years" earlier. The Court agrees that, in a proper case, upon a showing that a proposed transferee judge's experience with a patent had grown stale, such experience may not weigh in favor of transfer. However, that is not the case here. Contrary to Plaintiffs' representation at oral argument that the last of Judge Pfaelzer's cases settled four years ago, Judge Pfaelzer's experience is recent. The fourth of Judge Pfaelzer's Cabilly cases, *HGS*, settled in December 2012, less nine months ago. The third, *Glaxo Group*, settled in April 2012, and the second, *Centocor*, in September 2010. More to the point, *In re Verizon* does not treat settlement dates alone as the determinative factor. The *In re Verizon* court was concerned that the lapse in time would require the district court to "relearn a considerable amount" as well as "familiarize itself with reexamination materials" not previously before it. 635 F.3d at 562. The relevant concern then, is whether the promise of increased efficiency rings hollow. Here, the Court has no reason to suppose that it does. Judge Pfaelzer's experience with the Cabilly patents is not only broad, deep, and lengthy, but recent.

At oral argument, Plaintiffs suggested that Judge Pfaelzer's senior status supplied grounds to deny transfer. A district judge's senior status is not a reason unto itself to deny transfer. Indeed, it is not an appropriate consideration at all, except insofar as it bears on some other, recognized factor, such as docket congestion. *E.g.*, *Forrand v. Fed. Exp. Corp.*, C07-4674 TEH, 2008 WL 276389 (N.D. Cal. Jan. 31, 2008) (denying motion to transfer in part because judge's senior status and consequent "lower-than-average case load" neutralized difference in docket congestion that slightly favored proposed transferee court); *Pitney Bowes, Inc. v. Nat'l Presort, Inc.*, 33 F. Supp. 2d 130, 132 (D. Conn. 1998) (same); *Wurth Electronics Midcom, Inc. v. Digital Light, LLC*, CIV. 10-1002, 2010 WL 2925381, at *7 (D.S.D. July 19, 2010) (in determining that judicial efficiency

11

weighed against transfer: "Indeed, as a judge on Senior Status, I now have more than adequate time to try this case promptly."). The Court has no reason to believe that a transfer to a senior judge would be inappropriate here.

Plaintiff urges this Court to follow *In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010), but that case is distinguishable. In *In re Zimmer*, a Michigan plaintiff suing an Indiana defendant sought to manufacture venue in the Eastern District of Texas by opening a sham office there. 609 F.3d at 1380-81. Even though the convenience factors heavily favored transfer, the Eastern District denied the motion to transfer to Indiana, stressing that the Eastern District had a case "involving the same patent, the same plaintiff, and similar technology," as well as the presence of the plaintiff's office within the District. *Id.* at 1380 (internal quotation marks omitted). The Federal Circuit reversed and ordered the case transferred to Indiana. *Id.* at 1381-82. The Federal Circuit described the case as a "classic" of venue gamesmanship and determined that any gains to efficiency were "negligible" because neither Eastern District case had proceeded beyond "the infancy stages of litigation." *Id.* at 1382. In this case, however, substantial gains to efficiency may be reaped by transferring the litigation to the Central District, where Judge Pfaelzer has overseen four previous Cabilly cases well into maturity. Further, the chicanery that figured prominently in the Federal Circuit's analysis does not appear in this case's record. *In re Zimmer* is inapposite.

Equally unavailing are Plaintiffs' citations to three district court cases where motions to transfer were denied. *See* Opp'n at 21-22 (citing *Medimmune, LLC v. PDL Biopharma, Inc.*, C 08-5590 JF HRL, 2009 WL 1011519 (N.D. Cal. Apr. 14, 2009); *ConnecTel, LLC v. Cisco Sys., Inc.*, 2:04-CV-396, 2005 WL 366966 (E.D. Tex. Feb. 16, 2005); *ICU Med., Inc. v. Rymed Technologies, Inc.*, CIV. A. 07-468-JJF, 2008 WL 205307 (D. Del. Jan. 23, 2008)). In *PDL Biopharma*, Judge Fogel of this Court denied a motion to transfer sought largely on the ground that the proposed transferee venue had already presided over litigation related to patents before the transferor court. Judge Fogel determined that the "location of certain key witnesses" and "California state law issues" counterbalanced the transferee court's familiarity with the patents. 2009 WL 1011519, at *3, *3 n.7. Those counterbalancing factors are not present in this case. In *ConnecTel*, the district court found that any gains to judicial efficiency resulting from transfer would be "minimal, and

possibly non-existent." 2005 WL 366966, at *4. This Court has already found that the gains to judicial efficiency in this case will likely be substantial. Lastly, *ICU Medical* applied Third Circuit case law giving "paramount" importance to the presence of a forum selection clause. 2008 WL 205307, at *2 (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)). This Court has already determined that the forum selection clause here is due less weight because it benefits one of the parties seeking transfer. Plaintiffs' authorities offer no persuasive reason to deny the motion to transfer.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby **TRANSFERS** this case to the United States District Court for the Central District of California. Pursuant to Civil Local Rule 3-14, transfer shall become effective fourteen (14) days from the signature date of this Order. Defendants' motion to dismiss and Plaintiffs' motion to seal are hereby **DENIED WITHOUT PREJUDICE** to refiling in the Central District.

This Order terminates Docket Nos. 19, 24, 38, and 47.

**IT IS SO ORDERED**.

Dated: August 13, 2013

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**